FILED
2026 Aug-20 PM 01:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TIFFANY HARRIS, on behalf of herself and others similarly situated,** | ) | |
| ***Plaintiff*,** | ) | **CIVIL ACTION NO. 26-cv-332** |
| **v.** | ) | |
| **CORDOBA LEGAL GROUP PLLC,** | ) | **OPPOSED; ORAL ARGUMENT IS NOT REQUESTED** |
| ***Defendant*.** | ) | |

---

**DEFENDANT CORDOBA LEGAL GROUP PLLC'S**
**MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**
**WITH SUPPORTING MEMORANDUM OF LAW**

---

Defendant Cordoba Legal Group PLLC hereby moves to compel arbitration of Plaintiff Tiffany Harris's claims and to stay this litigation pending the outcome of those proceedings. In support of its motion, Defendant relies upon the memorandum of law contained herein and its separately filed exhibits. (Doc. 18-1, 18-2, and 19-1).[1]

[1] Defendant makes the arguments below in the alternative, and without waiver of any defense asserted in Defendant's Answer and Affirmative Defenses, including Defendant's position that it did not place the calls at issue and that Plaintiff cannot establish that any calls she received were made using an automatic telephone dialing system. Defendant is entitled under Federal Rule of Civil Procedure 8(d) to plead and argue inconsistent theories in the alternative, and nothing in this Motion should be construed as an admission that Defendant called Plaintiff or is otherwise liable under the Telephone Consumer Protection Act.

## **SUMMARY**

This is a Telephone Consumer Protection Act ("TCPA") case. Plaintiff complains about receiving calls while her phone number was listed on a do-not-call registry. Plaintiff agreed to arbitrate any dispute about such calls when she gave consent, checked a consent box, and clicked "I Agree" after typing her contact information into a website. She agreed to that site's Terms and Conditions, which included an arbitration agreement that encompasses Defendant as an intended third-party beneficiary. Defendant seeks to enforce that arbitration agreement. Because the Federal Arbitration Act ("FAA") requires a stay once a court determines that a dispute is subject to arbitration, Defendant respectfully requests that the Court compel arbitration of Plaintiff's individual claims and stay this action, including all class-related proceedings, pending completion of that arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024).

Defendant also requests a stay of discovery while the Court determines this motion, so that Defendant is not subjected to Plaintiff's wide-ranging, burdensome discovery.

## **EXHIBITS**

As required by the Court's Initial Order, Defendant has separately filed the following evidence in support of this motion.

Declaration of Alfredo Cordoba for Cordoba Legal Group, PLLC (Doc. 18-1).

Plaintiff's contact information as received by Cordoba Legal Group, PLLC (Cordoba Decl., Exh. A) (Doc. 18-1, at 7-8).

Record of Plaintiff's opt-in and consent record received by Cordoba Legal Group, PLLC (Cordoba Decl., Exh. B) (Doc. 18-1, at 9-10).

Declaration of Jose Ramirez for Debts Relief (Doc. 18-2).

Debts Relief's website page, where Plaintiff entered her information and consented to be called and agreed to Debts Relief's Terms and Conditions (Ramirez Decl., Exh. A) (Doc. 18-2, at 6-7).

Consent record for Plaintiff as maintained by Debts Relief (Ramirez Decl., Exh. B) (Doc. 18-2, at 8-9).

Debts Relief's website Terms and Conditions, including Arbitration Agreement (Doc. 18-2, at 10-17).

Excerpt from American Arbitration Association's Commercial Rules for Arbitration and Mediation (Doc. 19-1).

## **BACKGROUND**

On November 10, 2025, Plaintiff typed her contact information into a website owned by Debts Relief: www.debtsrelief.shop. These are the fields that she completed, what she read, what she saw, and what she agreed to:



**Select Your Debt Amount** *

How Much Do You Owe?

**What Can We Help You With Today** *

- [ ] Credit Cards
- [ ] Medical Debt
- [ ] Unsecured Loans
- [ ] Business Debt

**Name** *

**Email** *

**Phone** *

**State** *

Alabama

**Consent** *

By clicking **"I Agree"** below, I provide my **express written consent** to be contacted at the phone number I provided above for **marketing and informational purposes** by **Cordoba Legal Group**, **Debt Relief**, and/or **third parties acting on their behalf, including even if my telephone number is listed on any state or federal Do-Not-Call (DNC) registry**.

I understand that such contact may include **calls and text messages**, which may be made using an **automatic telephone dialing system**, **artificial or prerecorded voice**, or **AI-generated voice**. I further understand that **my consent is not required as a condition of purchasing any property, goods, or services**.

Message frequency may vary. **Message and data rates may apply**. Text **HELP** for help. Reply **STOP** to unsubscribe. **Calls may be recorded and monitored for quality assurance and compliance purposes**.

By Clicking "I Agree "below, I also agree to Debt Relief's privacy policy and terms and conditions.

My IP: 2607:fb90:e612:44f4:bc16:cf83:ce38:46ba Consent Date:10:48:39 am, EDT

I AGREE

(Ramirez Decl., ¶¶ 5-20, Exhs. A-C) (Doc. 18-2, at 1-17).[2] Plaintiff checked the "Consent" box, thereby agreeing to be called even if her phone number was on a do-not-call list. (*Id.* at ¶¶ 6-8, Exh. B) (Doc. 18-2, at 2-3, 9). Nevertheless, Plaintiff alleges that the calls to her were violations because her phone number – the same one she inputted into the website – was listed on a do-not-call registry. Thus, the heart of her case concerns what she agreed to and did at that website.

By inputting her information into Debts Relief's website, Plaintiff agreed to that website's Terms and Conditions, located at https://debtsrelief.shop/terms/. (Ramirez Decl., ¶¶ 5-20, Exhs. A-C) (Doc. 18-2, at 1-17). Those Terms and Conditions advised her that: "By accessing this website we assume you accept these terms and conditions in full. Do not continue to use Debts Relief's website if you do not accept all of the terms and conditions stated on this page." (Doc. 18-2, at 12). Among those Terms and Conditions is an arbitration provision. It states:

> **Dispute Resolution & Arbitration**
>
> The Agreement shall be treated as though it were executed and performed in the State of New York and shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflict of law principles). The parties hereby agree to arbitrate all claims that may arise under the Agreement. Without limiting the foregoing, should a dispute arise between the parties including, without limitation, any matter concerning the Debts Relief

---

[2] The referenced exhibits have been redacted to remove personally identifiable information. References to Plaintiff's phone number only show those digits that Plaintiff herself pleaded in her Complaint.

> Offerings, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) the parties agree to submit their dispute for resolution by arbitration before the American Arbitration Association ('AAA') in New York, NY, in accordance with the then current Commercial Arbitration rules of the American Arbitration Association; and (b) you agree to first commence a formal dispute proceeding by completing and submitting an Initial Dispute Notice which can be found here. We may choose to provide you with a final written settlement offer after receiving your Initial Dispute Notice ('Final Settlement Offer'). If we provide you with a Final Settlement Offer and you do not accept it, or we cannot otherwise satisfactorily resolve your dispute, you can submit your dispute for resolution by arbitration before the AAA, in your county of residence, by filing a separate Demand for Arbitration, which is also available on the Site here. For claims of Ten Thousand Dollars ($10,000.00) or less, you can choose whether the arbitration proceeds in person, by telephone or based only on submissions. If the arbitrator awards you relief that is greater than our Final Settlement Offer, then we will pay all filing, administration and arbitrator fees associated with the arbitration and, if you retained an attorney to represent you in connection with the arbitration, we will reimburse any reasonable attorneys' fees that your attorney accrued for investigating, preparing and pursuing the claim in arbitration. Any award rendered shall be final and conclusive to the parties and a judgment thereon may be entered in any court of competent jurisdiction. Although we may have a right to an award of attorneys' fees and expenses if we prevail in arbitration, we will not seek such an award from you unless the arbitrator determines that your claim was frivolous.'
>
> You agree that this arbitration agreement includes any disputes you may have against any companies that may contact you in conjunction with your use of our Site or services, and that any such companies are intended third-party beneficiaries of this arbitration agreement and may enforce it as if they were expressly named herein.

(Doc. 18-2, at 15-16).

Defendant received Plaintiff's contact information which originated at Debts Relief's website. (Cordoba Decl., ¶¶ 6-13, Exhs. A-B) (Doc. 18-1, at 2-3, 7-10). The alleged communications with Plaintiff – and her complaints about those communications – are subject to the site's Terms and Conditions, including the arbitration provision. Plaintiff contends that Defendant called Plaintiff (a fact that is hotly disputed by Defendant), and Defendant received Plaintiff's opt-in and contact information that originated at Debts Relief's website.

Defendant can enforce Debts Relief's arbitration agreement because, by its very language, the arbitration agreement extends to any company that may contact Plaintiff at the contact that she typed into the website. (Ramirez Decl. ¶ 16, Exh. C) (Doc. 18-2, at 4, 15-16). The arbitration agreement explicitly states that companies, such as Defendant, are "intended third-party beneficiaries of this arbitration agreement and may enforce it as if they were expressly named herein." (*Id.*) (Doc. 18-2, at 16). Plaintiff agreed to that term.

Plaintiff has raised a "dispute" with the intended third-party beneficiary Defendant "in conjunction with" her use of Debts Relief's website and the use of her

information that she input into that website. Plaintiff's claims against Defendant are thus subject to the arbitration agreement.

## ARGUMENT & AUTHORITIES

### A. Federal Law Governs.

The arbitration provision states that it "shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflict of law principles)." (Ramirez Decl., Exh. C) (Doc. 18-2, at 15). Nonetheless, the "arbitration agreement itself is governed by federal law because the dispute arises from an arbitration involving interstate commerce, notwithstanding the parties' selection of New York law." *Vinh Binh v. King*, No. 4:21-CV-02234, 2022 U.S. Dist. LEXIS 8216, at *8-9 (S.D. Tex. 2022) (citing *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1197 (2d Cir. 1996) ("Since the contract evidences a transaction involving interstate commerce, the Federal Arbitration Act applies, notwithstanding the parties' selection of New York law.")). "Regardless, applying New York law would lead to the same result." *Id.* "Generally, New York law 'directs courts to honor a strong presumption in favor of arbitration.'" *Id.* (quoting *Degi Deutsche Gesellschaft Fuer Immobilienfonds MBH v. Halley*, 1995 U.S. Dist. LEXIS 16737, 1995 WL 669087, at *4 (S.D.N.Y. Nov. 3, 1995)). "Courts applying Second Circuit and New York state laws have found that compelling arbitration on arbitrability issues is appropriate where […] 'the issues the non-signatory is seeking to resolve

in arbitration are intertwined with the agreement.'" *Id.* (quoting *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 209 (2d Cir. 2005)).[3]

The Eleventh Circuit likewise recognizes that, while state law generally governs whether an enforceable contract or agreement to arbitrate exists, the FAA supplies the governing federal policy in favor of arbitration within which that state-law inquiry proceeds. *Kelly v. Gulfco of Ala., LLC*, 2026 U.S. Dist. LEXIS 149657, at *6 (N.D. Ala. July 7, 2026), *citing Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367, 1368 (11th Cir. 2005).

Defendant is a Florida entity. (Compl. ¶ 7) (Doc. 1); (Answer ¶ 7) (Doc. 9). Plaintiff is an Alabama resident. (Compl. ¶ 6) (Doc. 1). This dispute expressly concerns TCPA, a federal statute, and the impact of consent that Plaintiff gave to Debts Relief, which has a Wyoming address. *See* https://debtsrelief.shop/contact/ (listing Sheridan, Wyoming address) (last accessed August 20, 2026). There is no question that the dispute arises from interstate commerce. Plaintiff laying blame on Defendant for not getting consent to override her do-not-call position is indeed intertwined with Debts Relief's extension of arbitration rights to third-party beneficiary companies, like Defendant, who rely on the consent obtained by Debts

---

[3] In the alternative, and as explained in Section D below, the same result follows even if Alabama's non-signatory equitable-estoppel doctrine, rather than New York law, governs Defendant's ability to enforce the arbitration agreement.

Relief to call people on the do-not-call registry. Compelling arbitration is proper in this case.

## B. FAA Factors are Satisfied.

The Federal Arbitration Act ("FAA") "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008); *Kelly*, 2026 U.S. Dist. LEXIS 149657 at *6. Section 2 of the FAA provides in relevant part that:

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 4 of the FAA in turn enables any "party aggrieved" by the failure of another to arbitrate under a written agreement for arbitration to petition a United States District Court "for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id*. at § 4.

In general, a party seeking to compel arbitration under the FAA must establish that (1) there is a valid agreement to arbitrate and (2) the claims raised fall within the scope of that agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). Because there is a presumption favoring agreements to arbitrate under the FAA, courts resolve doubts regarding an agreement's scope in

favor of arbitration. *Id.* This presumption only arises, however, after the party seeking to compel arbitration proves that a valid arbitration agreement between the parties exists. *Id.* (quoting *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003)); *see also Bazemore v. Jefferson Capital Sys., LLC,* 827 F.3d 1325, 1329, 1333 (11th Cir. 2016).

A court in this District recently applied that very framework, explaining that, "in ruling on a motion to compel arbitration, courts must apply a 'summary judgment-like standard.'" *Kelly*, LLC, 2026 U.S. Dist. LEXIS 149657, at *5 (quoting *Bazemore*, 827 F.3d at 1333). Under that standard, "a court 'may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if "there is no genuine dispute as to any material fact" concerning the formation of such an agreement.'" *Id.* (quoting FED. R. CIV. P. 56(a)).

**1. *Valid Agreement to Arbitrate***

The moving party must show that an agreement existed. *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022); *Kelly*, LLC, 2026 U.S. Dist. LEXIS 149657, at *10. If the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, courts may rule on the basis of that legal issue and avoid the need for further court proceedings. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017); *see also Wachovia Bank, Nat'l*

*Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011).

"In order for a contract to exist, there must be a manifestation of agreement between the parties." *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (citing *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 28-29 (2d Cir. 2002)); *see also Kelly*, 2026 U.S. Dist. LEXIS 149657, at *10. "Clickwrap agreements are widely accepted as valid and enforceable contracts." *Camilo*, 384 F. Supp. 3d at 439; *Meyer*, 868 F.3d at 73.

Here, Plaintiff did not merely browse a webpage or click through a generic checkout button; she affirmatively checked a dedicated "Consent" checkbox that itself recited, in the text immediately above it, that she was providing express written consent to be contacted by Defendant and third parties even if her number was on a do-not-call registry, and she then clicked a bolded "I AGREE" button positioned immediately adjacent to the hyperlinked Terms and Conditions. (Ramirez Decl., ¶¶ 5-20, Exhs. A-B) (Doc. 18-2, at 1-9). Courts have made it clear that "an electronic click can suffice to signify the acceptance of a contract ... as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer*, 868 F.3d at 75 (quoting *Sgouros v. Trans Union Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016)). More specifically, "courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented

to the terms of agreement by clicking "I agree." *Id.*; *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (collecting cases); *Camilo*, 384 F. Supp. 3d at 439.

The arbitration agreement is likewise valid. The FAA's Section 2 contemplates two types of validity challenges: "[o]ne type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). "[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Rent-A-Center*, 561 U.S 63, 70 (2010). Defenses aimed at the validity of the contract in its entirety "should . . . be considered by an arbitrator," not the courts. *Preston*, 552 U.S. at 351; *Buckeye*, 546 U.S. at 444; *Rent-A-Center*, 561 U.S. at 70 ("a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate"); *Hickey v. Smith*, No. 1:23-CV-2538 (MKV), 2025 U.S. Dist. LEXIS 38307, 2025 WL 692052, at *8 (S.D.N.Y. Mar. 3, 2025) ("[a] valid claim that a Plaintiff was fraudulently induced to sign a contract including an arbitration provision 'does not prevent a court from enforcing a specific agreement to

arbitrate.'" (quoting *Rent-A-Center*, 561 U.S. at 70). There is no basis upon which to hold that a standard clickwrap agreement such as before the Court here is invalid.

And when parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.[4] *See Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396-98 (2d Cir. 2018); *accord Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (incorporation of the AAA's rules, which grant the arbitrator authority to determine his or her own jurisdiction, constitutes clear and unmistakable evidence of an intent to delegate arbitrability questions to the arbitrator). *Kelly v. Gulfco of Alabama, LLC* further confirms both the enforceability of such delegation clauses and the narrow role reserved for this Court once one is in place. As that court explained, "Because arbitration agreements are simply contracts, the parties may agree 'to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable.'" 2026 U.S. Dist. LEXIS 149657 at * 7 (quoting *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015)). Indeed, parties may "agree to arbitrate

---

[4] Because the arbitration agreement itself designates Defendant as an intended third-party beneficiary entitled "to enforce it as if [Defendant] were expressly named herein," Defendant stands in the same position as a signatory for purposes of invoking that delegation clause; a non-signatory entitled to enforce an arbitration agreement is equally entitled to enforce the delegation clause nested within it. *See Terminix*, 432 F.3d at 1332–33 (non-signatory permitted to invoke delegation clause where entitled to enforce the underlying arbitration agreement).

gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Id.* (quoting *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017)). Such a delegation provision binds the parties where it "clearly and unmistakably" evidences the parties' intent "to delegate questions of arbitrability to the arbitrator." *Id.* (quoting *Hall v. Talladega Hous. Auth.*, No. 1:25-cv-647, 2026 U.S. Dist. LEXIS 47892, 2026 WL 659308, at *3 (N.D. Ala. Mar. 9, 2026)).

Here, Plaintiff agreed to have her dispute resolved "in accordance with the then current Commercial Arbitration rules of the American Arbitration Association[.]" (Ramirez Decl., Exh. C) (Doc. 18-2, at 15). The AAA's Commercial Arbitration rules provide, under Rule 7(a), that the arbitrator shall have the power to rule on his or her own jurisdiction, including the arbitrability of any claim or counterclaim:

> R-7. Jurisdiction
>
> **(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.

(Doc. 19-1, at 4-5) (AAA Commercial Arbitration Rules also available at https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation-

procedures.pdf) (last accessed August 19, 2026). A similar rule exists under the AAA's Consumer Rules, which was sufficient to find full delegation. *See*, *e.g.*, *Siefke v. Toyota Motor N. Am., Inc.*, 815 F. Supp. 3d 509, 525 (E.D. Tex. 2025) ("The express incorporation of the AAA Consumer Arbitration Rules, including Rule 7(a), 'constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'") (citation omitted). The incorporation of the AAA's delegation rules constitutes a "valid provision specifically committing . . . disputes [over arbitrability] to an arbitrator." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 299, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010).

**2. *Claims Fall Within Agreement's Scope***

Not only is the agreement to arbitrate valid and enforceable, but the dispute squarely fits within the scope of the Arbitration Agreement. Plaintiff agreed to the following arbitral scope:

> You agree that this arbitration agreement includes any disputes you may have against any companies that may contact you in conjunction with your use of our Site or services, and that any such companies are intended third-party beneficiaries of this arbitration agreement and may enforce it as if they were expressly named herein.

(Ramirez Decl., Exh. C) (Doc. 18-2, at 15-16). Even if Defendant had called Plaintiff as claimed, which Defendant disputes, it would fall within the scope of the arbitration agreement that Plaintiff agreed to when she entered her information and consent on Debts Relief's website. (Ramirez Decl., ¶¶ 5-20, Exhs. A-C) (Doc. 18-2,

at 1-17). So, too, would her claims against Defendant for its alleged contact in conjunction with and as a result of Plaintiff's use of Debts Relief's website. (*Id.*).

**a.** ***<u>The Prerecorded-Voice Claim Under 47 U.S.C. § 227(b)</u>***

Plaintiff alleges that Defendant used a prerecorded or artificial voice to call her cellular telephone without her "prior express written consent." 47 U.S.C. § 227(b)(1)(A), (b)(3)(B). The existence and scope of any written consent Plaintiff gave is the central, and essentially only, factual predicate for that claim. Because the only written consent reflected in this record is the consent Plaintiff gave through Debts Relief's website – the same consent that carries the arbitration clause – the prerecorded-voice claim falls squarely within the arbitration agreement's scope. Plaintiff cannot litigate whether she gave "prior express written consent" without necessarily litigating the terms of the very document that requires arbitration of disputes "concerning … the terms and conditions of the Agreement." (Ramirez Decl., Exh. C) (Doc. 18-2, at 15).

**b.** ***<u>The Do-Not-Call Registry Claim Under 47 U.S.C. § 227(c)</u>***

Plaintiff also alleges that Defendant made more than one call within a twelve-month period to a number registered on the National Do-Not-Call Registry for at least 31 days. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Unlike the prerecorded-voice claim, a Do-Not-Call Registry claim does not require written consent as an element, and a defendant may instead rely on an established business

relationship or other defenses. *See, e.g., Siringi v. Parkway Family Mazda/Kia*, 349 F.R.D. 641, 644 (S.D. Tex. 2023) (recognizing that Section 64.1200(c)(2), which prohibits making calls to a number on the national do-not-call registry does not apply when the caller has an established business relationship with the subscriber). That distinction does not remove the claim from the arbitration agreement's scope, however, because Plaintiff's own theory of liability against Defendant – as opposed to the elements of the statute in the abstract – is that Defendant lacked *any basis* to call a number on the Registry. The only basis Defendant ever had to contact Plaintiff's number is the consent and contact information she submitted through Debts Relief's website. Plaintiff's claim thus necessarily requires examining what Plaintiff agreed to at that website and whether that agreement authorized calls despite the Registry listing, again squarely placing the dispute "in conjunction with" Plaintiff's use of Debts Relief's site. (Ramirez Decl., Exh. C) (Doc. 18-2, at 16).

"Thus, because there is a valid and enforceable contract, and because the disputes fall within the scope of the Arbitration Agreement contained within that contract, the issues are fit to be resolved in accordance with the terms set forth in the Arbitration Agreement." *Camilo*, 384 F. Supp. 3d at 440; *see also Blash v. BCS Placements, LLC*, 2020 U.S. Dist. LEXIS 95391, 2020 WL 2832777, at *4 (S.D.N.Y. May 31, 2020) (similarly finding agreement covering "all claims, disputes and other matters in question arising out of, or relating to, this letter agreement" reflected the

"parties' clear intent to arbitrate issues of arbitrability"); *Maldonado v. NFL*, No. 1:22-CV-02289 (ALC), 2023 U.S. Dist. LEXIS 123727, at *18 (S.D.N.Y. 2023) ("Because these arbitration agreements seek to encompass 'any and all disputes' related to the Agreements, they are sufficiently broad. Second, the arbitration agreements specifically incorporate the procedures of the AAA. The rules of the AAA provide that arbitrators have the power to resolve arbitrability questions. As a result, the incorporation of the AAA rules necessitates that an arbitrator, as opposed to this Court, decide arbitrability.") (cleaned up).

### C. Plaintiff's Claims Against Defendant are Sufficiently Intertwined With the Debts Relief Agreement, Permitting Non-Signatory Defendant to Compel Signatory Plaintiff to Arbitrate

The Eleventh Circuit recognizes a version of equitable estoppel that permits a non-signatory to compel a signatory to arbitrate where the signatory's claims against the non-signatory are "intimately founded in and intertwined with the underlying contract obligations." *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (11th Cir. 1984); *accord Ex parte Stallings & Sons, Inc.*, 670 So. 2d 861, 863 (Ala. 1995) (quoting *McBro* and *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993)). Similarly, the Second Circuit has consistently held that non-signatories may invoke equitable estoppel to compel arbitration against signatories when the "issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has

signed." *Bankers Conseco Life Ins. Co. v. Feuer*, 2018 U.S. Dist. LEXIS 43828, at *10 (S.D.N.Y. Mar. 13, 2018) (quoting *Choctaw Generation Ltd. Partnership v. American Home Assur. Co.*, 271 F.3d 403, 404 (2d Cir. 2001) (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)); *see also Ross v. American Express Co.*, 478 F.3d 96, 98 (2d Cir. 2007) (non-signatories may invoke equitable estoppel if the claims against them are "inextricably intertwined" with the arbitration agreements).

Plaintiff's claims against Defendant meet that standard. Plaintiff does not allege that Defendant independently obtained her consent through some means unrelated to Debts Relief's website; she alleges that Defendant lacked consent notwithstanding the consent trail that began at that website. Resolving that allegation necessarily requires interpreting what Plaintiff agreed to when she checked the "Consent" box and clicked "I AGREE," which is the same transaction that produced the arbitration clause Defendant seeks to enforce. Plaintiff's claims are accordingly "intimately founded in and intertwined with" the Debts Relief agreement, not merely coincidentally related to it. *McBro*, 741 F.2d at 344.

### D. <u>In the Alternative, Alabama's Non-Signatory Estoppel Doctrine Compels the Same Result</u>

Further, and although the arbitration agreement's New York choice-of-law clause controls, and although federal common law equitable estoppel independently

supports arbitration for the reasons explained above, the same result follows even if the forum state's law – Alabama – governs Defendant's ability, as a non-signatory, to enforce the arbitration agreement. Alabama courts have historically applied federal equitable-estoppel principles more cautiously than their federal counterparts, but the Alabama Supreme Court has squarely held that a non-signatory may compel a signatory to arbitrate where the signatory's claims against the non-signatory are "intimately founded in and intertwined with the underlying contract obligations," expressly adopting the Eleventh Circuit's *McBro* standard. *Ex parte Stallings & Sons, Inc.*, 670 So. 2d at 863. The Alabama Supreme Court has since confirmed the continued viability of that doctrine, while cautioning that Alabama's formulation of equitable estoppel is narrower than some applications of the federal doctrine. *See Ex parte Isbell*, 708 So. 2d 571, 574–75 (Ala. 1997). For the reasons explained in Section C above, Plaintiff's claims against Defendant are intertwined with, not merely incidentally related to, the Debts Relief agreement: Plaintiff's theory of liability depends entirely on the adequacy of the consent memorialized in that agreement, and Defendant is expressly included as an authorized recipient of contact under that same consent. Because Plaintiff's claims satisfy even Alabama's narrower formulation of the intertwined-claims test, arbitration is warranted regardless of whether New York law, federal common law, or Alabama law ultimately governs Defendant's non-signatory status.

## E. **The Arbitration Agreement Contains No Class-Arbitration Mechanism, and Class Proceedings Should Be Stayed.**

The arbitration clause Plaintiff agreed to says nothing about class arbitration; it speaks only in terms of individual "disputes" between Plaintiff and any company that contacts her, resolved before the AAA. (Ramirez Decl., Exh. C) (Doc. 18-2, at 15-16). Under settled Supreme Court precedent, silence on the question of class arbitration is not enough to authorize it: courts "may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis," and may not infer consent to participate in class arbitration absent an affirmative contractual basis for concluding that the party agreed to do so. *Lamps Plus, Inc. v. Varela*, 587 U.S. 82, 89–90 (2019) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684–87 (2010)). Because the arbitration agreement here contains no affirmative authorization of class arbitration, Plaintiff's individual claims – and only Plaintiff's individual claims – are subject to arbitration. Plaintiff is the only person who submitted information to Debts Relief's website reflected in this record, and no other putative class member's claims are before the Court. Defendant accordingly requests that the Court compel arbitration of Plaintiff's individual claims, strike or dismiss the class allegations to the extent they purport to bind Defendant to class arbitration, and stay any class-related proceedings – including class discovery and any briefing on class certification – pending the outcome of Plaintiff's individual

arbitration, since the fate of any class claims cannot rationally be assessed while the named representative's own claims remain unresolved.

### F. <u>The Court Should Stay Discovery Pending Resolution of This Motion.</u>

Independent of the merits of arbitrability, the Court should exercise its discretion to stay discovery while this Motion is pending. Courts routinely stay discovery pending resolution of a threshold motion to compel arbitration, because requiring a defendant to litigate the very discovery burdens that arbitration is meant to avoid would defeat the purpose of the FAA before the threshold question is even decided. *See Preston*, 552 U.S. at 357–58 (explaining that a principal purpose of the FAA is to relieve parties of the cost and delay of litigation). That concern is acute here: Plaintiff's putative nationwide class claims implicate discovery into Defendant's marketing vendors, sub-vendors, lead-generation contracts, and call-handling practices reaching far beyond the three calls that Plaintiff alleges, and Plaintiff has already signaled an intent to pursue exactly that kind of broad discovery. Proceeding with such discovery before the Court resolves whether Plaintiff's claims belong in arbitration would impose exactly the litigation costs and delay the arbitration agreement was designed to avoid, would risk mooting the benefit of arbitration even if the Motion is later granted, and would not meaningfully prejudice Plaintiff, since any delay is limited to the period necessary to resolve a threshold

legal question. Weighing the substantial burden and cost to Defendant of undertaking class-wide discovery against the comparatively minimal prejudice to Plaintiff from a short delay, the balance favors a stay of all discovery pending resolution of this Motion.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court (1) compel arbitration of Plaintiff's individual claims; (2) stay this action in its entirety, including all class-related proceedings, pursuant to 9 U.S.C. § 3 and *Smith v. Spizzirri*, 601 U.S. 472 (2024), pending completion of that arbitration; and (3) stay all discovery pending resolution of this Motion.

Respectfully submitted,

*/s/ Stanley E. Graham*

Stanley E. Graham (ASB-8646-H25S)
Pierson Ferdinand, LLP
Mail: 73 White Bridge Rd.
Suite 103, PMB 352
Nashville, TN 37205
(615) 965-7831 (Telephone)
stan.graham@pierferd.com

*Counsel for Defendant*
*Cordoba Legal Group, PLLC.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's electronic filing system upon:

Anthony Paronich, Esq.
PARONICH LAW, PC
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
Fax: 508-318-8100
Email: anthony@paronichlaw.com

James Matthew Stephens, Esq.
METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
205-939-0199
Fax: 205-939-0399
Email: mstephens@mtattorneys.com

*Counsel for Plaintiff*

on this 20th day of August, 2026.

*/s/ Stanley E. Graham*
Stanley E. Graham